## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

SUNIL HINGORANI,

        Plaintiff,

v.

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA; THE
UNIVERSITY OF NEBRASKA; THE
UNIVERSITY OF NEBRASKA
MEDICAL CENTER; NEBRASKA
MEDICINE; UNMC PHYSICIANS,
JEFFREY GOLD (in both his individual
and official capacities); and JOANN
SWEASY (in both her individual and
official capacities),

        Defendants.

Case No. 4:26-cv-03157

**BRIEF IN SUPPORT OF MOTION
TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 8

FACTUAL BACKGROUND ............................................................................... 9

    A.   The Parties ................................................................................... 9

    B.   Dr. Hingorani Joins the PCCE ................................................... 10

    C.   Clinical Restrictions and Termination of the UNMCP Agreement ............... 10

    D.   The Purported Discrimination and Retaliation by the Board of Regents, the University of Nebraska, UNMC, Dr. Gold, and Dr. Sweasy ......................... 11

ARGUMENT ...................................................................................................... 12

    I.    THE UNIVERSITY OF NEBRASKA AND UNMC SHOULD BE DISMISSED FROM THIS ACTION BECAUSE THE BOARD OF REGENTS IS THE ONLY PROPER ENTITY UNIVERSITY DEFENDANT. .............................. 12

    II.   THE FOURTH AND FIFTH CAUSES OF ACTION ASSERT IMPERMISSIBLE FREESTANDING SECTION 1981 CLAIMS. ................. 14

1

III.   THE THIRD CAUSE OF ACTION AGAINST THE BOARD OF REGENTS FAILS BECAUSE THE BOARD IS NOT A "PERSON" SUBJECT TO LIABILITY UNDER SECTION 1983 AND THE CLAIM IS FURTHER BARRED BY THE ELEVENTH AMENDMENT. ............................................ 15

IV.   THE SECOND CAUSE OF ACTION AGAINST DR. GOLD IS BARRED BY QUALIFIED IMMUNITY. ................................................................. 18

V.    SOVEREIGN IMMUNITY AND THE NEBRASKA STATE TORT CLAIMS ACT BAR THE SIXTH, SEVENTH, EIGHTH, AND TENTH CAUSES OF ACTION AGAINST DR. GOLD AND DR. SWEASY. ..................................... 21

CONCLUSION ......................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulsalam v. Bd. of Regents of Univ. of Neb.*,
  No. 4:22-CV-3004, 2023 WL 4266378 (D. Neb. June 29, 2023) ........................... 13

*Alden v. Maine*,
  527 U.S. 706 (1999) ...................................................................................... 21

*Artis v. Francis Howell North Band Booster Ass'n*,
  161 F.3d 1178 (8th Cir. 1998) ....................................................................... 14

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...................................................................................... 21

*Becker v. Univ. of Neb. at Omaha*,
  191 F.3d 904 (8th Cir. 1999) .................................................................... 16, 17

*Bohl v. Buffalo Cty.*,
  251 Neb. 492, 557 N.W.2d 668 (1997) ............................................................. 24

*Bojanski v. Foley*,
  18 Neb. App. 929, 938–39, 798 N.W.2d 134 (2011) ............................................ 23

*Catania v. Univ. of Nebraska*,
  213 Neb. 418, 329 N.W.2d 354 (1983) ............................................................. 12

*Clemmons v. Armontrout*,
  477 F.3d 962 (8th Cir. 2007) ......................................................................... 20

*Cole v. Clarke*,
  8 Neb. App. 614, 620, 598 N.W.2d 768 (1999) .................................................. 25

*Cole v. Isherwood*,
  11 Neb. App. 44, 52, 642 N.W.2d 524 (2002) *overruled on other
  grounds* ..................................................................................................... 25

*Davis v. State*,
  297 Neb. 955, 902 N.W.2d 165 (2017) .......................................................... 22, 23

*Doe v. Bd. of Regents of Univ. of Nebraska*,
  280 Neb. 492, 788 N.W.2d 264 (2010), *overruled on other grounds by
  Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017) ........................................ 17

*Doe v. Univ. of Nebraska,*
No. 4:18CV3142, 2021 WL 424632 (D. Neb. Feb. 8, 2021) ................................... 13

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) .............................................................................................. 18

*Jasa v. Douglas County,*
244 Neb. 944, 510 N.W.2d 281 (1994).................................................................. 24

*Jett v. Dallas Indep. Sch. Dist.,*
491 U.S. 701 (1989) .......................................................................................... 14, 15

*Jill B. v. State,*
297 Neb. 57, 899 N.W.2d 241 (2017).................................................................... 22

*Jones v. McNeese,*
746 F.3d 887 (8th Cir. 2014) ............................................................................... 14

*Keeper v. King,*
130 F.3d 1309 (8th Cir. 1997) ............................................................................. 19

*Krause v. Bd. of Regents of Univ. of Neb.,*
No. 8:16CV204, 2016 WL 11658910 (D. Neb. July 15, 2016) .............................. 17

*Kuchar v. Krings,*
248 Neb. 995, 540 N.W.2d 582 (1995).................................................................. 24

*LeFever v. Dawson Cnty. Sheriff's Dep't,*
109 F.4th 1100 (8th Cir. 2024).............................................................................. 21

*Libault v. Mamo,*
No. 4:22-CV-3096, 2023 WL 3011259 (D. Neb. Mar. 20, 2023), *aff'd,*
No. 23-1802, 2023 WL 6532621 (8th Cir. Oct. 6, 2023) ....................................... 13

*Lundquist v. Univ. of S.D. Sanford Sch. of Med.,*
705 F.3d 378 (8th Cir. 2013) ............................................................................... 13

*Mathers v. Wright,*
636 F.3d 396 (8th Cir. 2011) ............................................................................... 20

*Mayorga v. Missouri,*
442 F.3d 1128 (8th Cir. 2006) ............................................................................. 18

*Messerschmidt v. Millender,*
565 U.S. 535 (2012) .............................................................................................. 21

4

*Montin v. Moore,*
846 F.3d 289 (8th Cir. 2017) .............................................................. 23, 25

*Mulla v. Univ. of Minn.,*
No. 20-CV-931, 2021 WL 603774 (D. Minn. Feb. 16, 2021), aff'd, No.
21-1693, 2022 WL 570099 (8th Cir. Feb. 25, 2022).............................. 16

*Onyiah v. St. Cloud State Univ.,*
5 F.4th 926 (8th Cir. 2021) ................................................................... 14

*Pearson v. Callahan,*
555 U.S. 223 (2009) ................................................................................ 18

*Potter v. Bd. of Regents of the Univ. of Neb.,*
287 Neb. 732, 844 N.W.2d 741 (2014)............................................ 16, 25

*Raygor v. Regents of Univ. of Minn.,*
534 U.S. 533 (2002) ................................................................................ 25

*Reiber v. County of Gage,*
303 Neb. 325, 928 N.W.2d 916 (2019)................................................... 24

*Santee Sioux Tribe v. Nebraska,*
121 F.3d 427 (8th Cir. 1997) .................................................................. 17

*Sebesta v. Davis,*
878 F.3d 226 (7th Cir. 2017) .................................................................. 16

*Stadler v. Curtis Gas, Inc.,*
182 Neb. 6, 151 N.W.2d 915 (1967) (Newton, J., dissenting; White,
C.J., and Carter, J., concurring in dissent) ......................................... 22

*Sundquist v. Nebraska,*
122 F. Supp. 3d 876 (D. Neb. 2015) ................................................. 19, 20

*Wagner v. Jones,*
664 F.3d 259 (8th Cir. 2011) .................................................................. 20

*Will v. Mich. Dep't of State Police,*
491 U.S. 58 (1989) .................................................................................. 16

*Williams v. Jackson,*
600 F.3d 1007 (8th Cir. 2010) ................................................................ 18

*Wilson v. Toney,*
294 F. App'x 252 (8th Cir. 2008) ........................................................... 19

**Statutes**

42 U.S.C. § 1981...................................................................................... 8, 11, 14, 15

42 U.S.C. § 1983............................................................................................*passim*

Neb. Rev. Stat. § 81–8,214 .................................................................................. 25

Neb. Rev. Stat. § 81-8,209 ............................................................................. 22, 24

Neb. Rev. Stat. § 81-8,210 ............................................................................. 22, 23

Neb. Rev. Stat. § 81-8,219(4) ............................................................................... 25

Neb. Rev. Stat. § 81-8,227 .................................................................................... 24

Neb. Rev. Stat. § 85–105 ............................................................................... 9, 12, 13

Neb. Rev. Stat. § 85-101 ....................................................................................... 13

Neb. Rev. Stat. § 85-102.01 .................................................................................. 13

Political Subdivisions Tort Claims Act ................................................................. 24

State Tort Claims Act ................................................................ 8, 21, 22, 23, 24, 25

**Other Authorities**

Neb. Const. Art. VII, § 10 ........................................................................ 13

Fed. R. Civ. P. 17(b) ................................................................................. 12

## INTRODUCTION

The Board of Regents of the University of Nebraska (the "Board of Regents"), the University of Nebraska, the University of Nebraska Medical Center ("UNMC"), Dr. Jeffrey Gold, and Dr. Joann Sweasy submit this brief in support of their Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). In a sixty-seven-page Complaint, Plaintiff asserts ten causes of action following Nebraska Medicine and UNMC Physicians' ("UNMCP") termination of Dr. Hingorani's employment after repeated problematic behavior over multiple years. Plaintiff names the Board of Regents, the University of Nebraska, UNMC, Dr. Gold or Dr. Sweasy in nine of the ten claims.

Eight fail under well-settled law, either for failure to state a claim or lack of subject matter jurisdiction. First, the Board of Regents is the only proper entity Defendant for the University Defendants. Second, Plaintiff cannot assert a direct claim against Dr. Gold and Dr. Sweasy under 42 U.S.C. § 1981. Instead, those claims must be brought under 42 U.S.C. § 1983. Third, the Section 1983 claim against the Board of Regents fails because the Board is not a "person" within the meaning of Section 1983 and those claims are further barred by the Eleventh Amendment. Fourth, the Section 1983 claim against Dr. Gold is barred by qualified immunity. Finally, the Nebraska State Tort Claims Act and sovereign immunity bar the state law claims asserted against Dr. Gold and Dr. Sweasy in the Sixth, Seventh, Eighth, and Tenth Causes of Action. The Court should therefore narrow the action to its plausible scope and dismiss all claims against the Board of Regents, the University

of Nebraska, UNMC, Dr. Gold, and Dr. Sweasy other than the First and Second Causes of Action against Dr. Sweasy under Section 1983 in her individual capacity, which will be subject to an appropriate qualified immunity challenge and other defenses as the case progresses.

## FACTUAL BACKGROUND

### A.     The Parties

Under Neb. Rev. Stat. § 85-105, the Board of Regents is a body corporate vested with the general governance of the University of Nebraska, the State's land grant university. (Compl. ¶¶ 20-21.) UNMC is part of the University of Nebraska and, like all University campuses, is governed by the Board of Regents. (*Id.* ¶ 22.)

Dr. Jeffrey Gold is the President of the University of Nebraska and the former Chancellor of UNMC. (*Id.* ¶ 25.) Dr. JoAnn Sweasy is the Director of the Fred & Pamela Buffett Cancer Center and the Director of the Eppley Institute for Research in Cancer and Allied Diseases. (*Id.* ¶ 26.) Both Dr. Gold and Dr. Sweasy are named in their individual and official capacities.

The Complaint also names two additional Nebraska non-profit entities. Nebraska Medicine is a non-profit healthcare system formed in 1997 through the merger of Clarkson Regional Health Services, Inc., and the former University Hospital. (*Id.* ¶ 23.) UNMCP is a non-profit faculty practice group that serves as an employer of Nebraska Medicine credentialed physicians in their clinical roles. (*Id.* ¶ 24.) Nebraska Medicine and its affiliate UNMCP are represented by separate counsel and are not the subject of this Motion.

## B. Dr. Hingorani Joins the PCCE

In June 2018, the Board of Regents approved the establishment of the Pancreatic Cancer Center of Excellence (the "PCCE"). (*Id*. ¶ 39.) Four years later, in July of 2022, Dr. Sunil Hingorani, an oncologist and pancreatic cancer researcher, commenced employment as its Director. (*Id*. ¶¶ 63-64.) As part of his role, Dr. Hingorani entered into a series of contracts with the Defendants: (1) a Board of Regents/UNMC Agreement for his annual faculty appointment (which was not renewed by the Board of Regents and will terminate on June 30, 2027); (2) a UNMC/College of Medicine compensation agreement; and (3) a UNMCP Agreement governing his clinical role at Nebraska Medicine, which expressly permitted either party to terminate without cause upon 60 days' written notice. (*Id*.)

## C. Clinical Restrictions and Termination of the UNMCP Agreement

In October 2024, clinical staff raised concerns regarding Dr. Hingorani's leadership of the Pancreatic Diseases Specialty Clinic ("PDSC"), a multidisciplinary clinic at Nebraska Medicine that Dr. Hingorani directed. (*Id*. ¶¶ 3, 223-24.) In response, Dr. Sweasy and Kyle Skiermont, Nebraska Medicine's Vice President of Pharmacy and Therapeutics, met with Dr. Hingorani. (*Id*.) Dr. Hingorani's unsupervised presence in the clinic was subsequently limited by Nebraska Medicine to his own scheduled patient visits, and he was barred from PDSC multidisciplinary conferences. (*Id*. ¶ 226.) Nebraska Medicine confirmed those restrictions in a December 10, 2024 letter. (*Id*. ¶ 253.) In January 2026, Nebraska Medicine

10

terminated the UNMCP Agreement without cause, effective March 24, 2026. (*Id.* ¶ 284.)

**D.    The Purported Discrimination and Retaliation by the Board of Regents, the University of Nebraska, UNMC, Dr. Gold, and Dr. Sweasy**

Plaintiff's claims against the Board of Regents, the University of Nebraska, UNMC, Dr. Gold, and Dr. Sweasy are premised on alleged race and national origin discrimination and retaliation arising from the clinical restrictions and termination of the UNMCP Agreement. (*Id.* ¶¶ 12, 284, 299, 310.) Plaintiff alleges Dr. Sweasy was primarily responsible for the alleged discriminatory and retaliatory conduct. (*Id.* ¶¶ 291-98.) In particular, Plaintiff contends that Dr. Sweasy engaged in a pattern of adverse treatment against scientists of East Asian descent, including Dr. Hingorani. (*Id.*) In addition to Dr. Sweasy, Plaintiff named Dr. Gold, the President of the University of Nebraska, due to his alleged role in the recruitment of Dr. Hingorani and his purported failure to remedy the various conditions about which Plaintiff allegedly complained. (*Id.* ¶¶ 52-53, 57, 280-81.)

Plaintiff asserts nine causes of action against Dr. Sweasy and Dr. Gold in their individual capacities. The three race discrimination claims are pled only against Dr. Sweasy. Those counts include the First Cause of Action under 42 U.S.C. § 1983 (*Id.* ¶¶ 299-309), the Fourth Cause of Action under 42 U.S.C. § 1981 (*Id.* ¶¶ 332-35), and the Sixth Cause of Action under Neb. Rev. Stat. § 20-148 (*Id.* ¶¶ 340-45). The remaining causes of action are asserted against both Dr. Sweasy and Dr. Gold. Those counts consist of the Second Cause of Action for retaliation under 42 U.S.C. § 1983 (*Id.* ¶¶ 310-17), the Fifth Cause of Action for retaliation under 42 U.S.C. § 1981 (*Id.*

¶¶ 336-39), the Seventh Cause of Action for retaliation under Neb. Rev. Stat. § 20-148 (*Id.* ¶¶ 346-351), the Eighth Cause of Action for whistleblower retaliation in violation of public policy (*Id.* ¶¶ 352-357), and the Tenth Cause of Action for tortious interference with contract and business expectancy (*Id.* ¶¶ 363-67).

Lastly, as against the entity University Defendants, the Board of Regents, the University of Nebraska, and UNMC, Plaintiff asserts only the Third Cause of Action, a *Monell*-style claim under 42 U.S.C. § 1983 alleging that their official policies, customs, and failures to train and supervise caused the deprivation of Plaintiff's constitutional rights. (*Id.* ¶¶ 318-31.)

ARGUMENT

I. **THE UNIVERSITY OF NEBRASKA AND UNMC SHOULD BE DISMISSED FROM THIS ACTION BECAUSE THE BOARD OF REGENTS IS THE ONLY PROPER ENTITY UNIVERSITY DEFENDANT.**

Plaintiff's attempt to assert claims against the University of Nebraska and UNMC contravenes the Federal Rules of Civil Procedure. Under Rule 17(b), the capacity to sue or be sued in federal court is governed for (1) individuals by the law of their domicile, (2) for a corporation by the law of the state in which it is organized, and (3) for all other defendants, like the entity University Defendants, "by the law of the state where the court is located." Nebraska law dictates that the Board of Regents is the only proper entity University Defendant. Neb. Rev. Stat. § 85–105; *see Catania v. Univ. of Nebraska*, 213 Neb. 418, 419, 329 N.W.2d 354, 354 (1983) (emphasizing that, for purposes of litigation, the "University of Nebraska" is "more accurately

12

described as the Board of Regents of the University of Nebraska"). The University of Nebraska and UNMC should thus be dismissed.

The Nebraska Legislature established the University of Nebraska system in 1869. Neb. Rev. Stat. § 85-101. Today, the University of Nebraska comprises four institutions: the University of Nebraska-Lincoln, the University of Nebraska at Omaha, the University of Nebraska at Kearney, and UNMC. Neb. Rev. Stat. § 85-102.01. The government of the University of Nebraska is vested in the Board of Regents, which, as a body corporate, "may sue and be sued." Neb. Rev. Stat. § 85-105; *see also* Neb. Const. art. VII, § 10.

The University of Nebraska and UNMC, by contrast, are unincorporated and have no statutory authority to sue or be sued in their own name, as courts have repeatedly recognized. *See Libault v. Mamo*, No. 4:22-CV-3096, 2023 WL 3011259, at *4 (D. Neb. Mar. 20, 2023), *aff'd*, No. 23-1802, 2023 WL 6532621 (8th Cir. Oct. 6, 2023) (holding that the Institute of Agriculture and Natural Resources at the University of Nebraska-Lincoln and the Office for Institutional Equity and Compliance at the University of Nebraska-Lincoln were not proper party defendants); *Abdulsalam v. Bd. of Regents of Univ. of Neb.*, No. 4:22-CV-3004, 2023 WL 4266378, at *3 (D. Neb. June 29, 2023) (dismissing UNMC as a defendant because only the Board of Regents had the capacity to be sued); *Doe v. Univ. of Nebraska*, No. 4:18CV3142, 2021 WL 424632, at *9 (D. Neb. Feb. 8, 2021) (dismissing the "University of Nebraska" because it "is not a proper defendant."); *see also Lundquist v. Univ. of S.D. Sanford Sch. of Med.*, 705 F.3d 378, 381 (8th Cir. 2013) (affirming the

13

district court's order made pursuant to Rule 17(b) that a medical school lacked the capacity to be sued under South Dakota law).

Consequently, the Court should dismiss the University of Nebraska and UNMC as separately named Defendants. All claims against the entity University Defendants must be asserted against the Board of Regents.

## II.    THE FOURTH AND FIFTH CAUSES OF ACTION ASSERT IMPERMISSIBLE FREESTANDING SECTION 1981 CLAIMS.

Plaintiff's Fourth and Fifth Causes of Action violate settled Eighth Circuit law, which prohibits freestanding Section 1981 claims of the very type Plaintiff attempts to assert against Dr. Sweasy and Dr. Gold. Those claims can be raised only under Section 1983.

As the United States Supreme Court held nearly four decades ago, Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). The Eighth Circuit has consistently enforced *Jett*'s prohibition against freestanding Section 1981 claims. *See, e.g.*, *Onyiah v. St. Cloud State Univ.*, 5 F.4th 926, 929 (8th Cir. 2021) (affirming the district court's dismissal of plaintiff's freestanding § 1981 claims against state actors.); *Jones v. McNeese*, 746 F.3d 887, 896, 900 (8th Cir. 2014) (reversing the district court's judgment with instructions to dismiss the complaint where plaintiff failed to bring a § 1981 claim through § 1983). In this Circuit, "[a] federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v.*

14

*Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998) (citing *Jett*, 491 U.S. at 735).

Plaintiff's Fourth and Fifth Causes of Action impermissibly assert a freestanding Section 1981 claim against Dr. Sweasy and Dr. Gold respectively. Both are alleged to be state actors, acting on behalf of the Board of Regents. (Compl. ¶¶ 25, 57, 311) (alleging that Dr. Gold, as the then Chancellor of UNMC, signed Plaintiff's Offer Agreement in his official capacity and, at all relevant times, acted under color of state law within the meaning of 42 U.S.C. § 1983); (Compl. ¶¶ 26, 300, 304) (alleging that Dr. Sweasy, as the Director of the Fred & Pamela Buffett Cancer Center and the Eppley Institute for Research in Cancer and Allied Diseases at UNMC acted at all relevant times under color of state law within the meaning of 42 U.S.C. § 1983). *See* STATE ACTOR, Black's Law Dictionary (12th ed. 2024) (defining a "state actor" as "[a] person or entity that acts on behalf of a governmental body.").

Accordingly, Plaintiff can assert a Section 1981 claim against Dr. Sweasy and Dr. Gold only through Section 1983, which he did in his First and Second Causes of Action. Plaintiff's attempt to duplicatively reassert those same claims in the Fourth and Fifth Causes of Action as freestanding Section 1981 claims fails as a matter of law.

**III.   THE THIRD CAUSE OF ACTION AGAINST THE BOARD OF REGENTS FAILS BECAUSE THE BOARD IS NOT A "PERSON" SUBJECT TO LIABILITY UNDER SECTION 1983 AND THE CLAIM IS FURTHER BARRED BY THE ELEVENTH AMENDMENT.**

The Third Cause of Action, which asserts a Section 1983 claim against the Board of Regents, continues Plaintiff's attempt to assert claims foreclosed by binding

precedent. First, the United States Supreme Court and the Eighth Circuit have repeatedly held that state actors, like the Board of Regents, are not "persons" within the meaning of Section 1983 and thus not subject to the act. Second, the claim is barred by the Eleventh Amendment.

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Board of Regents is an arm of the State of Nebraska. *See Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (holding that the University of Nebraska at Omaha "is part of the University of Nebraska, and, as noted by the district court, the University of Nebraska and its institutions are considered an arm of the State. . ."). Thus, the Board of Regents is not a "person" within the meaning of Section 1983. *See Potter v. Bd. of Regents of the Univ. of Neb.*, 287 Neb. 732, 739–40, 844 N.W.2d 741, 749–50 (2014) (holding that the "Board of Regents and [the individual defendants in their official capacities] . . . do not qualify as "persons" under § 1983"); *see also Sebesta v. Davis*, 878 F.3d 226, 231 (7th Cir. 2017) ("To the extent that this is an effort to sue the University [of Illinois], it cannot proceed. The University is an arm of the state, and states are not among the "persons" covered by the statute.").

Plaintiff's elaborate allegations about the factors for *Monell* liability are irrelevant. (Compl., ¶¶ 326-330). *Monell* applies to municipalities and local government entities, not entities that, like the Board of Regents, are an arm of the state. *See Mulla v. Univ. of Minn.*, No. 20-CV-931 (SRN/LIB), 2021 WL 603774, at *14 (D. Minn. Feb. 16, 2021), aff'd, No. 21-1693, 2022 WL 570099 (8th Cir. Feb. 25,

16

2022) (explaining that plaintiffs cannot rely on *Monell* to assert Section 1983 claims against state universities, in light of "binding authority from the Supreme Court and the Eighth Circuit.").

Moreover, Plaintiff's Third Cause of Action is barred by the Eleventh Amendment. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Both the Nebraska Supreme Court and the Eighth Circuit have held that the Board is a state agency with sovereign immunity under the Eleventh Amendment and thus may not be sued in federal court without consent. *See Doe v. Bd. of Regents of Univ. of Nebraska*, 280 Neb. 492, 510, 788 N.W.2d 264, 281 (2010), *overruled on other grounds by Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017) ("[T]he Board and the University of Nebraska are state agencies."); *Becker*, 191 F.3d at 908 ("[T]he University of Nebraska and its institutions are considered an arm of the State of Nebraska for purposes of the Eleventh Amendment."). The State of Nebraska has not waived its sovereign immunity or consented to suit in federal court. *Becker,* 191 F.3d at 908 (citing *Santee Sioux Tribe v. Nebraska*, 121 F.3d 427, 430–31 (8th Cir. 1997)); *Krause v. Bd. of Regents of Univ. of Neb.,* No. 8:16CV204, 2016 WL 11658910, at \*2 (D. Neb. July 15, 2016) (same).

On either ground, the Third Cause of Action against the Board of Regents must be dismissed.

17

## IV.    THE SECOND CAUSE OF ACTION AGAINST DR. GOLD IS BARRED BY QUALIFIED IMMUNITY.

The Section 1983 claim against Dr. Gold, the President of the University of Nebraska, is barred by qualified immunity. Accepting the facts as alleged, Dr. Gold was not personally involved in causing any purported violation of Plaintiff's constitutional rights and any such alleged right was not clearly established with respect to Dr. Gold's conduct.

To determine whether the doctrine of qualified immunity applies to a particular case, the Court applies a two-part test, "asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The Court may address these questions in either order. *Id.* at 1012 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Dr. Gold did not violate Plaintiff's constitutional rights. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) (internal quotations and citations omitted). The Complaint's operative allegations against Dr. Gold are minimal and generally reduce to two categories. Plaintiff alleges that Dr. Gold, in his then role as the Chancellor of UNMC, participated in recruiting him and signed the Offer Agreement in 2021. (Compl. ¶¶

18

52-53, 57.) Pre-employment recruitment activity, of course, does not trigger Section 1983 retaliation liability for conduct that occurred years later.

Next, Plaintiff claims that, on December 17, 2025, Dr. Gold, through counsel, declined Plaintiff's request for a personal meeting and instead asked Plaintiff to propose resignation terms. (*Id.* ¶ 281.) Plaintiff characterizes that single communication as retaliation for protected activity. (*Id.*)

Declining a request for a meeting falls far short of the personal participation in a retaliatory adverse employment action required for Section 1983 liability. In fact, the Complaint itself attributes the decisions that constitute the alleged adverse employment actions, namely the October 2024 clinical restrictions, the December 2024 confirmation letter, and the January 2026 UNMCP termination, to Nebraska Medicine and Dr. Sweasy, not to Dr. Gold, who by that time had left his position at UNMC to become the President of the University of Nebraska. (*Id.* ¶¶ 223-26, 253, 284.) Dr. Gold's alleged failure to intervene and redirect legal correspondence requesting a resignation proposal does not satisfy the personal-participation requirement for individual Section 1983 liability. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("[A] general responsibility for supervising the operations of a prison is insufficient to establish personal involvement" required for Section 1983 liability); *Wilson v. Toney*, 294 F. App'x 252, 253 (8th Cir. 2008) (affirming summary judgment where officials "had no medical expertise or role in delivering medical care" and holding that "liability cannot be based solely on defendants' general responsibility to oversee" operations); *Sundquist v. Nebraska*, 122 F. Supp. 3d 876,

19

881 (D. Neb. 2015) (dismissing individual-capacity claims against senior state officials where plaintiff "failed to allege facts plausibly suggesting" their personal involvement, and applying *Keeper*'s rule that "[t]he general duty of supervising is insufficient to establish personal involvement"); *Clemmons v. Armontrout*, 477 F.3d 962, 967-68 (8th Cir. 2007) (affirming summary judgment for a warden whose "general supervisory duties" were "insufficient to establish his personal involvement" and who had "no evidence indicating" he "was ever directly involved" in the challenged conduct).

Even if Plaintiff had plausibly alleged that Dr. Gold was personally involved in the alleged violations of Dr. Hingorani's constitutional rights, Dr. Gold is entitled to qualified immunity. "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wagner v. Jones*, 664 F.3d 259, 273 (8th Cir. 2011) (quoting *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011)); *see also Sundquist*, 122 F. Supp. 3d at 880 ("[A] government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that any reasonable official would have understood that what he is doing violates that right.").

The dispositive question is whether it was clearly established, at the time of Dr. Gold's alleged conduct in December 2025, that a university system president who (i) declined a personal meeting with a complaining employee and (ii) through counsel requested resignation terms could be held individually liable under Section 1983 for retaliation, where the underlying adverse employment decisions were allegedly made

20

by separate entities (Nebraska Medicine and UNMCP) and by a different official (Dr. Sweasy). Plaintiff can point to no case law placing that specific question beyond debate in this Circuit. *See LeFever v. Dawson Cnty. Sheriff's Dep't*, 109 F.4th 1100, 1111 (8th Cir. 2024) (holding that a law enforcement officer was entitled to qualified immunity for firing 10 to 15 shots at plaintiff's vehicle because "Mr. LeFever identifie[d] no cases demonstrating a clear violation of his rights on similar facts."). Indeed, Dr. Gold's single communication through counsel bears little resemblance to the type of direct, retaliatory action that triggers personal liability under Section 1983. Dr. Gold is thus entitled to qualified immunity on Plaintiff's Second Cause of Action, which "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011)).

## V.    SOVEREIGN IMMUNITY AND THE NEBRASKA STATE TORT CLAIMS ACT BAR THE SIXTH, SEVENTH, EIGHTH, AND TENTH CAUSES OF ACTION AGAINST DR. GOLD AND DR. SWEASY.

The Sixth, Seventh, Eighth, and Tenth Causes of Action repackage the alleged racial discrimination by Dr. Sweasy and purported retaliation and tortious interference by Dr. Sweasy and Dr. Gold as state law theories, presumably in an effort to avoid the Eleventh Amendment. Independent of the Eleventh Amendment, state sovereign immunity bars the Sixth, Seventh, Eighth, and Tenth Causes of Action against Dr. Sweasy and Dr. Gold, which impermissibly attempt to hold them liable individually for actions taken within the scope of their employment. *See Alden v. Maine*, 527 U.S. 706, 712–13 (1999) (noting that "Eleventh Amendment immunity" is

21

"something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.").

"[S]overeign immunity has been characterized as 'an ancient rule inherited from the days of absolute monarchy' or, less pejoratively, as an inheritance of 18th-century English law." *Jill B. v. State*, 297 Neb. 57, 66, 899 N.W.2d 241, 250 (2017) (quoting *Stadler v. Curtis Gas, Inc.*, 182 Neb. 6, 9, 151 N.W.2d 915, 918 (1967) (Newton, J., dissenting; White, C.J., and Carter, J., concurring in dissent)). It embodies the right of the "sovereign authority to be free of . . . liability except to the extent that it is waived or abrogated by the Legislature." *Id.* The doctrine "predated [Nebraska's] state constitution, which was adopted with this rule in mind." *Id.*

In 1969, the Nebraska Unicameral enacted a limited waiver of sovereign immunity through the Nebraska State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 *et seq.* (the "STCA"). Section 81-8,209 bars tort claims against the state, its agencies, and employees except as provided in the Act. *Davis v. State*, 297 Neb. 955, 969, 902 N.W.2d 165, 180 (2017). The section provides:

> The State of Nebraska shall not be liable for the torts of its officers, agents, or employees, and no suit shall be maintained against the state, any state agency, or any employee of the state on any tort claim except to the extent, and ***only to the extent***, provided by the State Tort Claims Act.

*Id.* (emphasis added). The relevant definitions are located in the ensuing section. Neb. Rev. Stat. § 81-8,210. First, subsection (3) defines "employees of the state" as "any one or more officers or employees of the state or any state agency . . ." *Id.* Second, subsection (4) defines a "tort claim" as "any claim against the State of Nebraska for

22

money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment . . ." *Id.*

Applying these definitions, the Nebraska Supreme Court, Nebraska Court of Appeals, and Eighth Circuit have repeatedly rejected attempts by plaintiffs, like Dr. Hingorani, to sue state officials for tortious conduct within the scope of their employment. "Under § 81-8,210, whether a plaintiff has sued a state officer or employee in his or her individual capacity is irrelevant to whether the STCA bars a tort claim against that officer or employee." *Davis*, 297 Neb. at 970, 902 N.W.2d at 181. Instead, "if an officer or employee was acting within the scope of his or her office or employment and the alleged tortious conduct falls within an exception to the State's waiver of tort immunity, the STCA bars a tort claim against the officer or employee, regardless of the capacity in which he or she was purportedly sued." *Id.*

Actions of this nature by state employees, like Dr. Gold and Dr. Sweasy, are within the scope of employment and thus subject to the STCA. After all, without their state office, Dr. Gold and Dr. Sweasy "could not have committed the tortious acts" in the first place. *Id.* (holding that Parole Board and correctional officials who revoked parole based on a miscalculated eligibility date were acting within the scope of their duties as a matter of law); *Montin v. Moore*, 846 F.3d 289, 292–93 (8th Cir. 2017) (holding that state-employed medical professionals who allegedly committed malpractice were acting within the scope of their employment and that the claim must be treated as against them in their official capacities); *Bojanski v. Foley*, 18 Neb.

App. 929, 938–39, 798 N.W.2d 134, 143–44 (2011) (holding that state officials who issued an allegedly defamatory press release and directed the termination of plaintiffs' employment were acting within the scope of their offices, and that the STCA provided immunity despite being sued individually); *Bohl v. Buffalo Cty.*, 251 Neb. 492, 500, 557 N.W.2d 668, 673 (1997) (holding that a deputy sheriff driving to testify on a matter from his prior employment was acting within the scope of his employment, requiring compliance with the Political Subdivisions Tort Claims Act)[1]; *Kuchar v. Krings*, 248 Neb. 995, 999, 540 N.W.2d 582, 585 (1995) (holding that a school district's head of maintenance en route to a work-related task was acting within the scope of his employment in a negligence claim arising from a pedestrian accident); *Reiber v. County of Gage*, 303 Neb. 325, 340, 928 N.W.2d 916, 927 (2019) (holding that jail correctional officers and the county sheriff were acting within the scope of their employment on a negligence claim arising from an inmate's suicide, and that the Political Subdivisions Tort Claims Act provided immunity).

Because Dr. Gold's and Dr. Sweasy's alleged actions were taken within the scope of employment, Plaintiff needed to bring his action pursuant to the STCA. "[T]he procedures provided by [the STCA] shall be used to the exclusion of all others." Neb. Rev. Stat. § 81-8,209. Dr. Hingorani did not allege compliance with those procedures, including the Act's requirements involving notice and venue. *See* Neb. Rev. Stat. § 81-8,227 (requiring STCA notice on risk manager within two years after

---

[1] Provisions in the Political Subdivisions Tort Claims Act should be construed in harmony with similar provisions in the STCA. *Jasa v. Douglas County,* 244 Neb. 944, 510 N.W.2d 281 (1994).

claim accrued prior to filing suit); Neb. Rev. Stat. § 81–8,214 (requiring all claims under Nebraska's STCA be brought in state district court). As a result, the Eighth and Tenth Causes of Action should be dismissed. *See Montin*, 846 F.3d at 292–93 (dismissing state law malpractice claim because the STCA required suits to be brought in state court); *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002) (holding that state university employees' state law discrimination claims under the Minnesota Human Rights Act, asserted as supplemental claims under § 1367 against a nonconsenting state university, were barred by the Eleventh Amendment).

In addition to those procedural barriers, the STCA expressly bars the Tenth Cause of Action against Dr. Sweasy and Dr. Gold. "The State Tort Claims Act shall not apply to . . . (4) [a]ny claim arising out of . . . interference with contract rights. . ." Neb. Rev. Stat. § 81-8,219(4).

Finally, the Sixth and Seventh Causes of Action seeking relief under Neb. Rev. Stat. § 20-148 fail to state a claim on the merits. The statute "is a procedural statute designed to allow plaintiffs to bypass administrative procedures in discrimination actions against private employers." *Potter*, 287 Neb. at 740, 844 N.W.2d at 750. "[I]t does not operate to waive sovereign immunity." *Id.* In fact, the statute "has no application" in actions against public employees like Dr. Gold and Dr. Sweasy. *Id.*; *see also Cole v. Clarke*, 8 Neb. App. 614, 620, 598 N.W.2d 768, 772 (1999) (same); *Cole v. Isherwood*, 11 Neb. App. 44, 52, 642 N.W.2d 524, 531 (2002) *overruled on other grounds* (same).

25

In sum, sovereign immunity bars the state law claims against Dr. Sweasy and Dr. Gold, and the Sixth and Seventh Causes of Action fail for the additional reason that Neb. Rev. Stat. § 20-148 does not support a claim against public officials.

## CONCLUSION

For the reasons stated above, the Court should dismiss (1) the Board of Regents, the University of Nebraska, the University of Nebraska Medical Center, and Dr. Gold as Defendants and (2) all claims against Dr. Sweasy other than the First and Second Causes of Action.

Dated: July 27, 2026.

THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, THE UNIVERSITY OF NEBRASKA, THE UNIVERSITY OF NEBRASKA MEDICAL CENTER, DR. JEFFREY GOLD, AND DR. JOANN SWEASY, Defendants

By:  /s/Steven D. Davidson
     Steven D. Davidson (NE# 18684 )
     Brian Barmettler (NE# 27017)
of  BAIRD HOLM LLP
     1700 Farnam Street, Suite 1500,
     Omaha, NE  68102-2068
     Phone: 402-344-0500
     sdavidson@bairdholm.com
     bbarmettler@bairdholm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michael J. Willemin
mwillemin@wigdorlaw.com

                                /s/Steven D. Davidson

26

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(1)(D), I certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Word 365, this document contains 6,114 words. The word-count function was applied to all text, including the caption, heading, footnotes, and quotations.

/s/Steven D. Davidson

7765729.4